*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1527**

In re the Marriage of:

Amy Daiker Werger, petitioner,
Respondent,

vs.

Brett Michael Werger,
Appellant.

**Filed April 4, 2016
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-FA-13-3518

Steven T. Hennek, Hennek Klaenhammer Law, PLLC, Roseville, Minnesota (for respondent)

Amy D. Joyce, Skolnick & Joyce, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Rodenberg, Judge; and Smith, John, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant-father challenges the district court's interpretation of the parties' stipulated dissolution judgment as allowing the parties' minor children to remain in California with respondent-mother while she continues her clinical medical trial. He also argues that the district court abused its discretion by determining that allowing the children to remain in California during respondent's treatment is in their best interests. We affirm.

**FACTS**

The parties' stipulation to the dissolution of their marriage was incorporated into the judgment and decree filed in August 2013. The parties are parents to two joint minor children. In summer 2012, respondent began experiencing symptoms related to a benign brain tumor with which she had been diagnosed years earlier. These symptoms included seizures, vision and hearing loss, migraines, and balance issues. Respondent was not a surgical candidate due to the tumor's location.

At the time of the parties' dissolution, respondent had been accepted into a clinical medical trial in California involving the use of a clinical investigational drug and radiation therapy. As relevant to this appeal, the stipulated judgment and decree provides:

> The parties have agreed that they will move to California for [respondent's] Clinical Trial Treatment at Cedars Sinai sometime after August 4, 2013 . . . Minnesota shall retain jurisdiction over the minor children at all times including while the parties temporarily reside in California. Both parties agree that their domicile shall remain in Minnesota, and that they intend to return to Minnesota upon completion of [respondent's] clinical medical trial treatment. The parties

agree that the move to California is temporary and that the parties intend to return to the State of Minnesota within 30 days of [respondent's] completion of her clinical trial treatment, unless otherwise agreed. Both parties waive their right to object to the children returning to Minnesota upon completion of [respondent's] medical trial treatment. [Respondent's] medical trial treatment is expected to begin on November 1, 2013 and conclude in October 2014. Unless otherwise agreed, if one party elects to return to Minnesota upon completion of [respondent's] medical trial treatment, the children shall return to Minnesota with the returning parent.

Respondent's clinical trial was later estimated to be completed in January 2015.[1] In fall 2014, respondent learned that she might be eligible to continue in the clinical trial beyond the initial one-year plan. That December, the parties entered into a mediated agreement postponing respondent's motion to permit the children to remain in California after January 2015 until she learned whether she qualified for "the second phase of the clinical drug trial." To continue in the clinical trial, respondent was required to obtain at least a partial response to the first phase of the trial, defined as a greater than or equal to 15 percent reduction in the size of the tumor. Respondent achieved a 23.8 percent reduction and therefore qualified to continue with the clinical drug treatment trial.[2]

---

[1] The parties liberally cite to documents included in both parties' affidavits that were filed under seal in the district court. Neither party sought leave to file a confidential and a nonconfidential version of the appellate briefs. Because the parties' briefs are not under seal, we are not constrained in disclosing information contained in the briefs. *See Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 655 n.1 (Minn. App. 2011) (discussing Minn. R. Pub. Access to Recs. of Jud. Branch 4, subd. 1), *review denied* (Minn. Apr. 19, 2011).

[2] Respondent does not qualify for radiation therapy due to other medical issues.

In April 2015, the parties separately moved for relief based on their interpretation of the stipulated dissolution judgment, with respondent requesting an order requiring the parties' children to remain in California and appellant requesting that the children be permitted to return with him to Minnesota.

At the motion hearing, respondent testified that she remained in the clinical trial that she had been accepted into at the time of the stipulated dissolution judgment and that the trial was now expected to conclude in March 2019. Respondent stated that she only anticipated the clinical trial lasting one year, but health issues prevented her from being able to complete the clinical trial within that timeframe. Respondent argued that both parties were aware of the unknowns concerning her health and that was the reason the parties used the language "upon completion of [respondent's] medical trial treatment." Respondent also testified that she would relocate from California to Minnesota if the district court ordered the children to return, which would eliminate her ability to participate in the clinical trial that has improved her symptoms and would likely lead to a worsening of symptoms related to a different disorder. Relocating to Minnesota would also cause respondent to lose her job and health insurance. Finally, respondent presented evidence indicating that she had close relationships with the children and that the children had adjusted well to California.

Appellant argued that the parties had agreed that the California relocation would only be for one year. He acknowledged that respondent had not completed the clinical trial treatment, but claimed that she had completed the portion of the trial that the parties had

4

agreed upon at the time of the stipulated dissolution judgment. Appellant argued that respondent failed to properly research other alternative options that might avoid her having to remain in California; that he never intended to put his life on hold for more than one year; and that returning to Minnesota was in the children's best interests.

The district court granted respondent's motion. The district court first concluded that the parties' December 2014 mediated agreement was unambiguous and did not preclude respondent from bringing her motion because she achieved the partial response as defined by the agreement and was able to continue with the clinical trial.[3] The district court denied appellant's request for conduct-based attorney fees, a determination appellant also does not appeal. The district court then found that the stipulated dissolution judgment unambiguously conditioned the children's return to Minnesota upon respondent's completion of her clinical trial. The district court determined that the one-year estimation in the stipulated dissolution judgment was not binding because it was "aspirational in nature." Because respondent credibly testified that she would complete the clinical trial in March 2019, the district court concluded that returning the children to Minnesota before that time would be "premature."

---

[3] Appellant argued at the motion hearing that the mediated agreement precluded respondent from bringing her motion because she failed to qualify for the "second phase" (which he characterized as "Phase II") of the clinical study. Although appellant appears to allege that the district court's conclusion that respondent was permitted to bring her motion was erroneous, he does not adequately brief this issue on appeal. Therefore, this issue is not properly before this court. *See McKenzie v. State*, 583 N.W.2d 744, 746 n.1 (Minn. 1998) (applying the rule that arguments not briefed are not addressed in a case where the appellant "allude[d] to" an issue but "fail[ed] to address [the issue] in the argument portion of his brief").

5

The district court found that even if the stipulated dissolution judgment was ambiguous, the parties' concern at the time of signing the document was with respondent completing the clinical trial, rather than with returning to Minnesota by a specific date. The district court concluded that the parties did not know or anticipate exactly when the clinical trial would end, and used the language "completion of [the] clinical trial" instead of setting a specific date based on their hope that respondent could participate in the clinical trial so that her health would improve.

Finally, the district court addressed the best interest factors as required under Minn. Stat. § 518.175, subd. 3 (2014), and determined that granting respondent's motion to relocate with the children to California until she completed her clinical trial was in the children's best interests. The district court therefore ordered that the children return to Minnesota with the returning parent within 30 days of the end of the 2018-2019 academic year. This appeal followed.

## D E C I S I O N

### *Interpretation of the stipulated dissolution judgment*

Appellant challenges the district court's interpretation of the stipulated dissolution judgment as unambiguous and its conditioning of the children's return upon respondent's completion of her clinical medical trial. Appellant also argues the district court erred in concluding that the children would remain in California even if the relevant judgment provision was ambiguous because the parties' intent in the move was to allow respondent to participate in the clinical trial.

6

*The stipulated dissolution judgment is unambiguous.*

A stipulated dissolution judgment is a binding contract. *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997). Whether a provision in a stipulated dissolution judgment is clear or ambiguous is a legal question that we review de novo. *Anderson v. Archer*, 510 N.W.2d 1, 3 (Minn. App. 1993) (clarity); *Halverson v. Halverson*, 381 N.W.2d 69, 71 (Minn. App. 1986) (ambiguity). Generally, a document is ambiguous if it "is reasonably susceptible to more than one meaning." *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn. 1990); *see Landwehr v. Landwehr*, 380 N.W.2d 136, 138 (Minn. App. 1985) (making a similar statement regarding a provision in a stipulated dissolution judgment). When its language is unambiguous, the judgment is construed according to its plain meaning. *Starr v. Starr*, 312 Minn. 561, 562-63, 251 N.W.2d 341, 342 (1977).

Appellant argues that the district court erred by ignoring the parties' "clear intention that the move to California would be of [a] limited duration" of approximately one year. Appellant claims that the district court ignored documentation showing that respondent had completed "year one threshold testing" within the "expected" timeframe that the parties had agreed to in the judgment and decree. Finally, appellant argues that the "district court has transformed a temporary arrangement—generously and compassionately made on [a]ppellant's part . . . into a move that will last at least five years and potentially until the children reach majority."

Here, the plain meaning of the relevant language of the stipulated dissolution judgment clearly states that the children would return to Minnesota "upon completion of

7

[respondent's] clinical medical trial treatment." The language does not limit respondent's participation in the clinical trial to only the first year of testing or to the "Phase I" portion of the clinical trial. Appellant admits that respondent continues to participate in the clinical trial. The stipulated judgment does not specify a date by which the children would be required to return to Minnesota whether or not respondent had completed her clinical trial. Appellant's arguments would essentially require us to violate the general rule that prohibits courts from relying on extrinsic evidence to establish contractual ambiguity in an unambiguous term. *Wilcox v. State Farm Fire and Casualty Co.*, ___ N.W.2d ___, ___, 2016 WL 516707, at *3 (Minn. Feb. 10, 2016) (citing *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn. 1995)).

Because the language in the stipulated dissolution judgment unambiguously permits the children to remain in California until respondent completes the clinical medical trial, and because respondent remains enrolled in the trial, the district court correctly determined that it would be premature to require the children to return to Minnesota.

> *Even if the stipulated dissolution judgment is ambiguous, the district court did not err in interpreting it as permitting the children to remain in California until the completion of respondent's clinical trial.*

A district court's determination of the meaning of an ambiguous judgment and decree provision is a fact question, which appellate courts review for clear error. *Tarlan v. Sorensen*, 702 N.W.2d 915, 919 (Minn. App. 2005), *review denied* (Minn. Mar. 15, 2005). Because the same judge who entered the stipulated dissolution judgment in 2013 is the

judge who determined its meaning in this proceeding, her reading of the provision is entitled to "great weight." *Id.* at 919.

Appellant argues that the district court gave no weight to his interpretation of the stipulated dissolution judgment, which he claims is supported by documentation indicating that the parties only intended that respondent would participate in a temporary one-year trial. Appellant's argument lacks merit. The district court found that both parties expected the clinical trial to only last one year at the time of the stipulated dissolution judgment. However, the district court concluded that the parties intended to move to California to permit respondent to participate in the clinical trial and hopefully improve her symptoms. Because respondent was still participating in the clinical trial that was improving her medical condition, the district court found that the children should remain in California until respondent completes her clinical trial. The district court's conclusion is amply supported by the record.

Moreover, appellant does not cite any legal authority for his interpretation that the word "temporary" cannot be considered a period longer than one year. When interpreting a contract, "the language is to be given its plain and ordinary meaning," and a contract should be interpreted "in such a way as to give meaning to all of its provisions." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). "Temporary" is defined as "[l]asting for a time only; existing or continuing for a limited (usu[ally] short) time; transitory." *Black's Law Dictionary* 1602 (9th ed. 2009). Because "temporary" could be interpreted to extend to a period of years based on its ordinary meaning, the district court

9

did not err in interpreting the term as consistent with "completion of [respondent's] clinical trial."

Appellant also appears to argue fraudulent inducement for the first time on appeal. Because this issue was not raised in the district court, we decline to address it here. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

### *Relocation*

Appellant argues that the district court abused its discretion by granting respondent's request to relocate the children to California and challenges several of the district court's findings. In reviewing a district court's relocation decision, we are "limited to considering whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotation omitted). We will "set aside a district court's findings of fact only if clearly erroneous, giving deference to the district court's opportunity to evaluate witness credibility." *Id.* "Findings of fact are clearly erroneous whe[n] an appellate court is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). Interpretation of a statute is a question of law reviewed de novo. *Id.* at 282.

When a party challenges a district court's findings, that party shall summarize the evidence "tending directly or by reasonable inference to sustain" the challenged findings. Minn. R. Civ. App. P. 128.02, subd. 1(c). "That the record might support findings other than those made by the [district] court does not show that the court's findings are

10

defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000); *see Elliott v. Mitchell*, 311 Minn. 533, 535, 249 N.W.2d 172, 174 (1976) (affirming findings, but noting that evidence might have supported another conclusion); *Zander v. Zander*, 720 N.W.2d 360, 368 (Minn. App. 2006) (observing that, while the record could support a different decision, "this court may not substitute its judgment for that of the district court"), *review denied* (Minn. Nov. 14, 2006). It is not the role of this court to reweigh the evidence presented to the district court. *Vangsness*, 607 N.W.2d at 475. An appellate court's "duty is performed when we consider all the evidence . . . and determine [whether] it reasonably supports the [district court's] findings." *Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951).

If a parent has been awarded court-ordered parenting time, the other parent may not move the child's residence to another state except upon court order or with the consent of the other parent. Minn. Stat. § 518.175, subd. 3(a) (2014).[4] In determining whether to permit a parent to move a child's residence to another state, the district court must base its decision on the best interests of the child, and consider eight statutory factors. *Id.*, subd. 3(b) (2014). These factors include:

> (1) the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing

---

[4] It could be argued that appellant already consented to the relocation by virtue of the stipulated dissolution judgment, rendering any further analysis superfluous. This case does not involve a parent seeking to permanently relocate children to a new location; rather, it involves a question of whether the children should remain living in California (as they have since August 2013) during respondent's clinical trial. Because neither party raises this argument, we examine the district court's best-interest analysis.

11

to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life;

(2) the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration special needs of the child;

(3) the feasibility of preserving the relationship between the nonrelocating person and the child through suitable parenting time arrangements, considering the logistics and financial circumstances of the parties;

(4) the child's preference, taking into consideration the age and maturity of the child;

(5) whether there is an established pattern of conduct of the person seeking the relocation either to promote or thwart the relationship of the child and the nonrelocating person;

(6) whether the relocation of the child will enhance the general quality of the life for both the custodial parent seeking the relocation and the child including, but not limited to, financial or emotional benefit or educational opportunity;

(7) the reasons of each person for seeking or opposing the relocation; and

(8) the effect on the safety and welfare of the child, or of the parent requesting to move the child's residence, of domestic abuse, as defined in section 518B.01.

*Id.*

***Best-interest factors***

Because the district court has broad discretion in deciding what is in the best interests of the children, there is "scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness*, 607 N.W.2d at 477. The district court considered testimony from a motion hearing and exhibits provided by both parties before making findings on the factors below.

12

*The child's relationship with the parent proposing to relocate, the nonrelocating parent, siblings, and other significant persons.*

The district court acknowledged that the parties have joint physical and joint legal custody and share nearly equal parenting time. The district court found that the children have close relationships with both parents who continue to be actively involved in their lives. The district court also found that the children's relationships with the parties' families were "no more significant than the typical grandparent or aunt and uncle relationship." Therefore, the district court determined that this factor was neutral. Appellant does not specifically challenge the district court's findings on this factor.

*The age and needs of the child, and the impact of relocation on the child.*

The district court found that the children, ages 9 and 11 at the time of the hearing, were at "very formative and adaptable ages and it is important for them to have both of their parents actively involved in their lives." The district court found that while the impact of the relocation itself was neutral, respondent's testimony that she would leave her clinical trial prior to its completion if the children returned to Minnesota favored remaining in California because it was not in the children's best interests "to have to witness their mother's potential deterioration." Appellant challenges this finding, claiming that the district court erroneously relied on respondent's "potential deterioration," which he characterizes as based on respondent's "inappropriate threat to abandon treatment" and her unsupported assertions that she could not continue with the experimental drug used in the California trial and might die.

Appellant does not dispute that remaining in the clinical trial is recommended by respondent's doctors and that she has shown positive results. Although appellant argues that respondent "failed to prove that continuing treatment was unavailable to her in or near Minnesota," he also acknowledges her testimony that she had conducted online research concerning the clinical drug. Respondent testified that she only qualified for two studies in neighboring states, but that those studies did not involve the use of the drug that has decreased the size of her tumor. Additionally, respondent also stated that she had initially sought a second opinion from Cedars Sinai because two Minnesota hospitals had offered only treatment for symptoms. The district court apparently found respondent's testimony to be credible, and "credibility determinations . . . are the province of the district court." *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 96 (Minn. App. 2008).

Moreover, appellant's argument that respondent used an "inappropriate threat to abandon treatment" is inaccurate because she testified that while she would prefer to follow her doctors' recommendation to remain in the clinical trial, she would try to find some other type of treatment if she returned to Minnesota. Respondent simply testified that she would return with the children to Minnesota if that was what the district court ordered, just as appellant admitted that he would remain in California if the district court granted respondent's motion. Because the children enjoy a close relationship with respondent, and respondent's symptoms have improved during the clinical trial, it was logical for the district court to consider the impact that respondent's deteriorating health may have on the children if they were required to return to Minnesota.

14

*The feasibility of preserving the relationship between the nonrelocating parent and the child through parenting time arrangements.*

The district court found that this factor was neutral, potentially irrelevant, and "largely hypothetical" given appellant's testimony that he would remain in California if respondent's motion was granted. The district court found that appellant would maintain a "substantial and significant relationship" with the children if he chose to return to Minnesota alone because the children would spend extended periods with appellant during the summer and school breaks. The district court considered the relocation as "temporary" and believed that any modification would be "limited in duration." The district court also found that the parties' incomes are such that traveling costs for parenting time would not "overly tax the parties' financial circumstances."

Appellant argues that these findings are clearly erroneous because respondent did not produce any evidence that relocation would not negatively impact the children's relationship with him and that he can only maintain a close relationship with them if he remains in California. But appellant cites no legal authority requiring respondent to prove that appellant's relationship with the children would not be negatively impacted if he potentially made the choice to return to Minnesota.

Appellant also claims that it is "undisputed that he would be denied the significant and ongoing contact with his children that he has maintained throughout their lives unless he is forced to remain in California." But the district court expressly found that appellant would maintain a "substantial and significant relationship" with the children if they

15

remained in California and he returned to Minnesota because they would spend extended periods with him during the summer and school breaks.

Finally, appellant argues that the district court's characterization of the relocation as "temporary" is erroneous. Once again, he cites no legal authority in support of this position. As discussed above, the ordinary meaning of the word "temporary" may include a term of years. Further, even if the children's relationship with appellant might be diminished by such a cross-country move, one negative factor does not require rejection of respondent's motion. "The statute and caselaw make clear that the ultimate issue is the child[ren]'s best interests as assessed under the totality of the considered factors." *Hagen v. Schirmers*, 783 N.W.2d 212, 216 (Minn. App. 2010) (citing Minn. Stat. § 518.175, subd. 3(b) (describing best-interests test) and *Clark v. Clark*, 346 N.W.2d 383, 385 (Minn. App. 1984) ("It is well established that the ultimate question in all disputes over [parenting time] is what is in the best interest of the child."), *review denied* (Minn. June 12, 1984)).

*The child's preference, considering the child's age and maturity.*

The district court determined that this factor was neutral because the children are too young for their preference to be considered. Appellant does not challenge this determination.

*The pattern of conduct of the parent seeking relocation either to promote or thwart the relationship of the child and the nonrelocating parent.*

The district court determined that this factor favored respondent because appellant's allegations that respondent refused to exchange dates with him when he travelled and that the move has interfered with the children's relationship with his extended family did not

16

rise to the level of "thwarting" appellant's relationship with the children. The district court found that the parties maintained a schedule that was "very close to a 50/50 parenting time split, even with the dates that [respondent] has covered for [appellant] while he is traveling." Appellant does not expressly challenge this determination, which is supported by his admission that respondent has not tried to limit or discourage his relationship with the children.

*Whether relocation will enhance the quality of life for the parent seeking relocation and the child.*

The district court found that permitting the relocation to extend until 2019 would have a significant impact on respondent's health because she would be able to remain in the clinical trial. The district court found respondent's testimony that she would only be able to continue the clinical treatment with the drug she currently receives if she remained in California to be credible. The district court also found credible respondent's testimony that she would lose her job and her health insurance if she returned to Minnesota with the children. The district court noted appellant's testimony that he believed it would be financially in the children's best interests to return to Minnesota despite the fact that respondent would be unemployed and uninsured. Appellant also admitted that it was ultimately in the children's best interests for respondent to complete the clinical trial and get well. The district court concluded that this factor weighed in favor of respondent.

Appellant's argument that the district court's finding was based "almost entirely on" the clinical trial is inaccurate because the district court clearly addressed the financial impact respondent's unemployment and lack of health insurance would have on the

17

children and on appellant, who would likely be required to pay child support upon the parties' return to Minnesota due to respondent's unemployment.

*The reasons the parents seek or oppose relocation.*

The district court found that respondent wanted to remain in California to continue participating in her clinical trial. The district court determined that appellant opposed the relocation because the cost-of-living in Minnesota is significantly lower than California, the children would have their own rooms in a house, his family is closer, and he wishes to foster the Midwestern values of responsibility, honesty, integrity, and hard work in the children. The district court determined that this factor favored respondent because her health was more important than the higher cost of living, the children did not have very close ties with appellant's extended family, and good moral values can be fostered regardless of location. Appellant does not specifically challenge any of these findings.

*The effect on the safety and welfare of the child, or of the parent requesting to relocate, of domestic abuse.*

The district court found that this factor was inapplicable here, a determination appellant does not challenge.

In a thorough and carefully analyzed order, the district court concluded that after balancing the best-interest factors, respondent established that remaining in California until the end of her clinical trial is in the children's best interests. The district court's findings indicate thoughtful consideration of both parties' arguments concerning this difficult situation, and are supported by the evidence and the reasonable inferences drawn

18

therefrom. The district court did not err in granting respondent's motion to remain in California until the end of her clinical medical trial.

**Affirmed.**